[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has appealed from an assessment of damages made by the defendant for the taking of her property and has applied for a reassessment thereof. The property taken is in the Town of Bloomfield and lies on the easterly side of Goodman Street. It is described in the amended complaint and is shown on a map entitled: TOWN OF BLOOMFIELD MAP SHOWING LAND ACQUIRED FROM DIANE B. HOFFMAN BY THE STATE OF CONNECTICUT RECONSTRUCTION OF CONN. ROUTE 218 SCALE 1" = 40' OCT. 1990 ROBERT GUBALA TRANSPORTATION CHIEF CT Page 7282 ENGR. — BUREAU OF HIGHWAYS. A copy of the map was introduced into evidence by agreement and marked Exhibit A.
At the trial of this matter, the parties stipulated that the date of the take was September 4, 1991, that damages were assessed by the defendant in the amount of $630,000, and that the sum of $630,000 was deposited with the Clerk of the Superior Court and has been withdrawn by the plaintiff.
The subject property, which is 14 acres, more or less, in area, is in the southeasterly section of the Town of Bloomfield. Bloomfield is a largely suburban community, although CIGNA Insurance Company and Kaman Aerospace Corporation lie within its borders. There are shopping facilities in the Town and it is served by state highways. The southeasterly section of the Town is primarily residential, but the Copaco shopping center is in the central portion of the southeasterly section on Cottage Grove Road. The subject property is on the easterly side of Goodman Street and has frontage on Goodman Street of 349 feet, more or less. It is 250 feet, more or less, southerly of Cottage Grove Road on Goodman Street and is bounded on the east in part by land of Connecticut Packing Co., Inc., and in part by land of Bercrose Associates. The Copaco shopping center lies to the east.
The subject property lies in an Industrial 1 zone in which business and other non-residential uses are permitted. It is flag-shaped and generally level and at street grade. The Inland Wetlands and Watercourses map which was in effect on the date of taking was dated in 1974 and designated virtually all of the subject property as within inland wetlands. At the date of taking, the map was in the process of being revised. The northernmost 250 feet, more or less, of the subject property was relatively open. The rest of the subject property was wooded. At the date of taking there was a large concrete foundation on the open portion of the property, but otherwise it was unimproved. The subject property has all public utilities available to it. The property was taken by the defendant in connection with reconstruction of Cottage Grove Road, Connecticut Route 218, in order to mitigate destruction of wetlands occurring in the course of reconstruction of Connecticut Route 218.
The plaintiff called Roger J. Kellman, Bloomfield CT Page 7283 Town Engineer, as a witness. Kellman is the Inland Wetlands agent for the Inland Wetlands Commission. He testified that a revision of the Inland Wetlands and Watercourses map of 1974 was undertaken in 1988 and that a new map was adopted on October 21, 1991. On the new map, about 60% of the subject property is designated as wetlands.
Peter R. Marsele, a qualified real estate appraiser, was called as an expert witness by the plaintiff. Marsele was familiar with the subject property and knew that several years before the taking the property owner had caused to be excavated the northernmost 250 feet, more or less, of the subject property, from Goodman Street easterly to approximately 140 feet from the easterly property line. New soil was deposited and a large building was erected which was used first as a market, later as tennis courts and finally as the headquarters of a construction company. The building was demolished in the late 1970's so that the property could be treated for tax purposes as open space. The foundation and flooring remained and were on the subject property at the date of taking. Marsele opined that approximately 50% of the subject property is wetlands. He opined that the highest and best use for the subject property was for development of a shopping center. He considered that the subject property was ideal in size for the purpose and in the vicinity of an established shopping center. He testified that it is in the only industrial zone in Bloomfield which permits retail sales and in the only area in the town available for new retail stores. Marsele used the market comparison approach to value. He considered sales of smaller properties in Bloomfield in close proximity to the subject property but having other uses. He also considered sales of comparably sized properties in Manchester in proximity to the Buckland Hills Mall, also a shopping center but a more elegant one than the Copaco shopping center. After making necessary adjustments, Marsele opined that the subject property had a fair market value at the date of taking of $150,000 per acre, or a total value for the entire 14 acres of $2,100,000.
The defendant called Richard H. Barry, a qualified real estate appraiser, as an expert witness. Barry considered that the entire 14 acres of the subject property was within inland wetlands based upon the 1974 Inland Wetlands and Watercourses map. He CT Page 7284 opined that the wetlands designation was due to the soil characteristics rather than to streams and wildlife. His discussions with town officials persuaded Barry that approval for development of the subject property could have been obtained from the proper authorities even though it was designated wetlands. He also opined that the highest and best use for the subject property was for commercial development subject to Inland Wetlands authority approval. He considered that major reconstruction would be required if there were to be development along Goodman Street. Barry used the comparable sales approach to value and found two sales in South Windsor and one sale in Windsor which he considered comparable. Each of the sales contained a substantial amount of designated wetlands. The Windsor sale was in an industrial zone comparable to the zone in which the subject property lay. One of South Windsor sales was partly industrial and partly residential and the other was commercial and flood plain. Each was close to the size of the subject property. After making necessary adjustments, Barry opined that the fair market value of the subject property on the date of taking was $45,000 per acre, or a total value for the entire 14 acres of $630,000.
The defendant also called as a witness Thomas B. Hooper, the director of planning for Bloomfield. Hooper had held his position for about four years and he worked with the Town Planning and Zoning Commission and the Zoning Board of Appeals. His experience had led him to believe that the planning and zoning commission desires to confine retail development to certain areas. Although the zoning regulations would permit retail development of the subject property with a special permit, Hooper opined that it would be very difficult to have any shopping center or commercial development approved for the site of the subject property.
Marsele testified that he had been the advisor to the planning and zoning commission before Hooper became the director of planning. He agreed with Hooper that there is in Bloomfield a desire to confine retail development, but he testified that the subject parcel lies within an area of approximately 100 acres south of Cottage Grove Road and between Goodman and Granby Streets which for many years both the town officials and the property owners have intended should be commercially developed. CT Page 7285
We have concluded that the subject property could have been commercially developed. We conclude that the necessary special permit for retail development could have been obtained and that approval would have been granted by the Inland Wetlands Commission. No attempts to obtain any permits or approvals had been made by the plaintiff up to the date of taking. While there had been a building on the property, it had been demolished and the land was raw and undeveloped. There was no access from the subject property to Cottage Grove Road and Goodman Street would require major reconstruction in order to develop the property. The subject property is nevertheless in close proximity to the Copaco shopping center and is a part of a limited quantity of land available in Bloomfield for commercial development. We conclude that the highest and best use for the subject property was for commercial development at the proper time.
Our duty in an appeal from an award for the acquisition of property by eminent domain is to reach our own conclusion of value by weighing the opinions of the appraisers and the claims of the parties in light of all the circumstances bearing upon value and our own knowledge of the elements affecting value.
After having seen the property, and having given due consideration to the testimony of all the witnesses and to all of the evidence, and relying upon our own knowledge of the elements establishing value, we conclude that the damages sustained by the plaintiff were $861,000. Judgment may enter for the plaintiff for the further sum of $231,000 in addition to the sum of $630,000 which was deposited by the defendant and withdrawn by the plaintiff, with interest on said further sum of $231,000 from the date of taking to the date of payment, together with costs. No allowance is made for appraisal fees because the plaintiff's appraiser has waived any claim he might have had for a fee.
George D. Stoughton State Trial Referee
William C. Bieluch State Trial Referee
John M. Alexander State Trial Referee